IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEVEN L. LINDSEY; TIFFANY LINDSEY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
|        Plaintiffs, | |
|     vs. | |
| MERIDIAS CAPITAL, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA fka COUNTRYWIDE HOME LOANS, INC. TX; BAC HOME LOANS SERVICING, LP; U.S. BANK NATIONAL ASSOCIATIONS as TRUSTEE FOR THE CERTIFICATE HOLDERS LXS 2007-15N; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; | |
|        Defendants | |

CIVIL NO. 11-00653 JMS/KSC

ORDER GRANTING DEFENDANTS MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC.; BANK OF AMERICA, N.A.; AND U.S. BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## ORDER GRANTING DEFENDANTS MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC.; BANK OF AMERICA, N.A.; AND U.S. BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## I. INTRODUCTION

On May 31, 2011, Plaintiffs Steven and Tiffany Lindsey ("Plaintiffs")

filed a Complaint in the Third Circuit Court of the State of Hawaii against

Defendants Meridias Capital, Inc. ("Meridias"), Mortgage Electronic Registration

Sytems, Inc. ("MERS"), Bank of America fka Countrywide Home Loans, Inc.

("BANA"); BAC Home Loans Servicing LP ("BAC"); and U.S. Bank National

Association as Trustee for the Certificate Holders LXS 2007-15N ("U.S. Bank")

(collectively "Defendants") asserting claims titled (1) Violation of the Real Estate

Settlement Procedures Act [("RESPA")] 12 U.S.C. § 2605 et seq., and Accounting;

(2) Stay of Nonjudicial Proceedings; and (3) Quiet Title.  On October 26, 2011,

MERS, BANA, and U.S. Bank removed the action to this court.

Currently before the court is MERS, BANA, and U.S. Bank's

("Moving Defendants") Motion to Dismiss, in which they argue that the Complaint

fails to state a claim upon which relief can be granted.[1]  Based on the following, the

court GRANTS the Motion to Dismiss.

## II.  BACKGROUND

### A.  Factual Background

As alleged in the Complaint, in April 2007, Plaintiffs entered into a

mortgage loan transaction for $425,600 with Meridias secured by real property

located at 64-5244 Puu Nani Drive, Kamuela, HI 9643 (the "subject property").

---

[1]  Meridias has not appeared in the action, but remains as a named Defendant.  Although Meridias has not appeared, Moving Defendants' arguments apply equally to Meridias such that the court sua sponte dismisses Meridias for the same reasons set forth by Moving Defendants. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) (upholding dismissal in favor of a party which had not appeared, on the basis of facts presented by other defendants which had moved to dismiss) (citations omitted).

Doc. No. 1-2, Compl. at 5.[2]  The mortgage lists Meridias as the lender, and states

that MERS "is acting solely as a nominee for Lender and Lender's successors and

assigns.  MERS is the mortgagee under this Security Instrument."  Doc. No. 11-1,

Defs.' Ex. A.[3]  According to the Complaint, "[t]he mortgage security was granted

to MERS, so the note and the mortgage were split from the inception."  Doc. No.

1-2, Compl. at 5.

>    According to the Complaint, the mortgage loan had a "rapidly

adjusting rate mortgage," and Plaintiffs began to have difficulty making payments

after their tenant moved out and Plaintiffs were unable to find a replacement.  Doc.

No. 1-2, Compl. at 5-6.  Plaintiffs therefore attempted to modify or rework the loan

with Countrywide, who at that time purported to be their lender.  *Id.* at 6.

In addition to Countrywide, various other Defendants have allegedly asserted

---

[2]  The Complaint, by and large, does not number individual paragraphs.  It also attaches as exhibits collections of documents such that each "exhibit" includes multiple documents.  The court cites to the Complaint and exhibits as best it can.

[3]  The court takes judicial notice of the mortgage, which is a public document recorded in the Bureau of Conveyances.  *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Although, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion, Fed. R. Civ. P. 12(d), it 'may take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment." (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

ownership of the loan, including BANA, BAC, and U.S. Bank.[4]  *Id.* at 6.  The only

assignment of mortgage recorded with Hawaii's Bureau of Conveyances, however,

was a December 8, 2009 assignment from MERS, on behalf of Meridias, to U.S.

Bank, whose address is listed as "C\O Bank of America fka Countrywide Home

Loans, Inc."  *Id.* at Compl. Ex. 2.  The Complaint asserts that the recording of

transfers regarding the subject property is incomplete, causing a cloud upon the

title.  *Id.* at Compl. at 6-7.

        On December 8, 2009, U.S. Bank recorded a notice of intent to

foreclose under power of sale.  *Id.* at 6; *see also id.* at Compl. Ex. 2.  On December

15, 2009, U.S. Bank provided Plaintiffs a "Notice Required by the Fair Debt

Collection Practices Act ["FDCPA"], 15 U.S.C. Section 1692, et seq."  *Id.* at

Compl. Ex. 1.  The December 15, 2009 letter explained, among other things, that

(1) Routh Crabtree Olson ("RCO") "has been retained to initiate foreclosure

proceedings" on the subject property, (2) the amount of the debt is $459,455.76,

(3) the FDCPA entitles Plaintiffs to dispute the debt and/or request the name of the

original creditor within thirty days of the letter, and (4) if Plaintiffs request such

information, then RCO will suspend foreclosure efforts until the information is

---

[4]  It appears that Plaintiffs may have confused loan ownership with loan servicing.
Indeed, the Complaint alleges that BANA and BAC serviced the mortgage loan.  Doc. No. 1-2,
Compl. at 4 ¶¶ 5-6; *see also id.* at Compl. Ex. 4 (letter from Routh Crabtree Olsen explaining
that U.S. Bank employed BANA to service the loan on its behalf).

provided.  *Id.*

A January 7, 2010 letter from Plaintiffs to RCO provides:

As required by the [FDCPA], please provide me with the following:

1.      You have not provided me with the "ledger of payments".  When I made payments I sent them registered mail.
2.      I do dispute this debt.
3.      I want to know the name of the original creditor and who has legitimate "possession of the original note".
4.      You have not provided me with the "original note" with my signature.

*Id.* at Compl. Ex. 4.

On January 18, 2010, RCO responded by, among other things, (1) providing a copy of the note, mortgage, and payment history of the loan; and (2) explaining that MERS assigned the loan to U.S. Bank, that U.S. Bank employed BANA to service the obligation, and that BANA retained RCO to initiate foreclosure proceedings.  *Id.*  On January 30, 2010, Plaintiffs reiterated the requests in their January 7, 2010 letter, and on February 22, 2010, RCO responded by directing Plaintiffs to RCO's January 18, 2010 letter.  *Id.*

On June 10, 2010, Plaintiffs sent RCO a twelve-page letter titled "Affidavit of Truth and Statement of Facts[;] 'Qualified written request.'"  *Id.*  The June 10, 2010 letter asserts that it is a request pursuant to the FDCPA and a

qualified written request ("QWR") pursuant to RESPA.  The letter then proceeds to demand that RCO (1) investigate and audit Plaintiffs' account, (2) produce copies of "all pertinent information regarding this loan," and (3) answer an exhaustive list of questions.  The documents requested and questions seeking information span an array of topics including ensuring compliance with federal laws, accounting and servicing systems used, debits and credits, mortgages and assignments, attorneys' fees, suspense/unapplied accounts, late fees, property inspections, broker price opinion fees, force-placed insurance, and servicing of the mortgage loan.  *Id.*

As alleged in the Complaint, Plaintiffs' January 7, 2010 letter qualifies as a QWR under RESPA and RCO "sent an inadequate response to Plaintiff's requests and refused to produce even a certified copy of the original promissory note to show that his clients had any right to enforce the note or the security that was placed thereon."  *Id.* at Compl. at 8.

## B.    Procedural Background

On May 31, 2011, Plaintiffs filed this action in the Third Circuit Court of the State of Hawaii, asserting claims against Defendants titled (1) Violation of the Real Estate Settlement Procedures Act 12 U.S.C. § 2605 et seq., and Accounting; (2) Stay of Nonjudicial Proceedings; and (3) Quiet Title.  On October 26, 2011, MERS, BANA, and U.S. Bank removed the action to this court.

On November 10, 2011, Moving Defendants filed their Motion to Dismiss. Plaintiffs filed an Opposition on January 23, 2012, and Moving Defendants filed a Reply on January 30, 2012. Pursuant to Local Rule 7.2(d), the court determines the Motion to Dismiss without a hearing.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of

action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 129 S. Ct. at 1950.

## IV. <u>DISCUSSION</u>

Moving Defendants argue that the Complaint must be dismissed for a variety of reasons. The court addresses Moving Defendants' arguments in turn.

### A. Failure to Plead Facts as to Each Party

As an initial matter, Moving Defendants argue that the Complaint must be dismissed because it is unclear exactly what Plaintiffs are asserting against each particular party. Doc. No. 6-1, Defs.' Mot. at 5. The court agrees -- none of the individual counts makes any particular allegations as to any specific party, and

the general allegations for the most part lump all the parties together. Such conclusory pleading fails to state a claim that is plausible on its face as to any Defendant.

In opposition, Plaintiffs do not address this argument and indeed fail to address *any* of Plaintiffs' claims and/or Defendants' arguments. Instead, Plaintiffs make generalized (and at times nonsensical) arguments that Defendants cannot foreclose without establishing a chain of title and/or establishing its interest in the subject property, and that Defendants caused various title defects due to unrecorded transfers and securitization of the mortgage loan.[5] Putting aside that these arguments are unsupported by law,[6] such arguments are irrelevant to whether Plaintiffs have stated any claims. Simply put, Plaintiffs' Opposition is completely unhelpful to determining whether the Complaint states a claim upon which relief can be granted.

---

[5] Plaintiffs go so far as to argue that Defendants are not the real party in interest and have no standing. Plaintiffs, not Defendants, brought this action and it should go without saying that a defendant has the right to defend itself in a litigation.

[6] As explained below, a borrower may not assert a claim based on a lender's non-possession of and/or failure to produce the original Note and Mortgage. Further, "any argument that MERS lacked the authority to assign its right to foreclose and sell the property based on its status as 'nominee' cannot stand in light of [*Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034 (9th Cir. Sept. 7, 2011).]" *Velasco v. Sec. Nat'l Mortg. Co.*, 2011 WL 4899935, at *11 (D. Haw. Oct. 14, 2011). Specifically, *Cervantes* held that claims attacking the MERS recording system as fraudulent fail given that mortgages generally disclose that MERS's role as acting "solely as nominee for Lender and Lender's successors and assigns," and that MERS has the right to foreclose and sell the property. *Cervantes*, 656 F.3d at 1042. Plaintiffs must consider these authorities in determining whether they can amend their claims.

Accordingly, the court finds that as a general matter, the Complaint fails to state a claim as to any party.

**B.     Violation of RESPA and Accounting (Count I)**

Count I asserts that Plaintiffs' January 7, 2010 letter was a QWR pursuant to RESPA and that Defendants failed "to provide a written response acknowledging receipt of [the QWR]" and "never responded adequately to Plaintiffs' reasonable requests." Doc. No. 1-2, Compl. at 8. Count I further asserts that "[t]he amount of money still owed, if any, to Defendants or anyone else claiming an interest in the loan is unknown and cannot be determined without an accounting." *Id.* at 9. Defendants argue that Count I, whether read as asserting a claim for a RESPA violation or for an accounting, fails to state a claim for relief.[7] The court agrees.

*1.     RESPA*

Plaintiffs' RESPA claim fails to allege sufficient facts to plausibly support that Defendants failed to properly respond to a QWR or that Plaintiffs suffered damages.

---

[7] Count I also references Hawaii Revised Statutes ("HRS") §§ 667-4 and 667-37. The court addresses HRS § 667-37 in its discussion of why Count II fails to state a claim. HRS § 667-4, titled "Defenses," provides that in a foreclosure action, the mortgagor may defend such suit by "show[ing] any matter in legal or equitable avoidance of the mortgage." According to its plain language, § 667-4 does not create a private cause of action and to the extent Plaintiffs assert a claim pursuant to § 667-4, the court dismisses it as a matter of law.

a.      *Servicer's response to a QWR*

RESPA provides that "[i]f any servicer of a federally related mortgage loan receives a [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days[.]"

12 U.S.C. § 2605(e)(1)(A).  A QWR is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that: (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  "Servicing" is defined as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

After receiving the QWR, within sixty days, the loan servicer must, if the servicer determines an error in the account, make appropriate corrections to the

borrower's account and notify the borrower of the correction in writing.  12 U.S.C.

§ 2605(e)(2)(A).  If the servicer determines that the account is not in error, the

servicer must provide the borrower with a written explanation or clarification

stating the reasons why the servicer believes the borrower's account is correct.  *Id.*

§ 2605(e)(2)(B).  If the request pertains to a request for information, the servicer

must either provide the information to the borrower or explain why such

information is unavailable.  *Id*. § 2605(e)(2)(C).

Defendants argue that Plaintiffs' January 7, 2010 letter asked for

information beyond the proper subject of a QWR, and in any event, Defendants

responded to the January 7, 2010 letter by providing servicing information.  The

court agrees that the January 7, 2010 letter (and indeed, all of Plaintiffs' letters to

RCO)[8] sought information beyond "information relating to the servicing" of

_____

[8]  The court recognizes that Plaintiffs sent, and RCO responded to, several other letters
requesting information.  Count I, however, asserts a RESPA violation based on the January 7,
2010 letter only.  But even if the Complaint had alleged that Plaintiffs' other letters constitute
QWRs, such assertion would fail to state a claim upon which relief can be granted for the same
reasons explained below as to the January 7, 2010 letter.

Indeed, Plaintiffs' January 30, 2010 and April 6, 2010 letters simply reiterated the
requests in Plaintiffs' January 7, 2010 letter.  In contrast, Plaintiffs' June 10, 2010 letter took a
shot-gun approach by requesting any and all information and documents related in any manner to
Plaintiffs' loan.  Although the Complaint does not assert RESPA violations based on any of
Plaintiffs' letters beyond the January 7, 2010 letter, Plaintiffs should be aware that this court has
rejected the proposition that RESPA allows a borrower to request, and forces a servicer to
provide, "any and all" documents vaguely relating to servicing of the loan.  *See Menashe v. Bank
of N.Y.*, 2012 WL 397437, at *7 (D. Haw. Feb. 6, 2012).  Rather, the plain language of RESPA
requires a servicer to provide information -- not necessarily documents -- "relating to servicing
of" a loan, which in turn is defined as "receiving any scheduled periodic payments from a
(continued...)

12

Plaintiffs' loan. Specifically, requests seeking information on the validity of the

loan and mortgage documents (such as documents relating to the original loan

transaction and its subsequent history) simply "do not fall within the confines of

RESPA." *Junod v. Dream House Mortg. Co.*, 2012 WL 94355, at *3 (C.D. Cal.

Jan. 5, 2012) (citing *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d

1002, 1014 (N.D. Cal. 2009) (dismissing RESPA claim with prejudice after

observing that the requirement "[t]hat a QWR must address the servicing of the

loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes

a duty upon the loan servicer, and not the owner of the loan"); *MorEquity, Inc. v.

Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) (dismissing a RESPA claim

because "[a]ccording to the allegations . . . , the letter sought information about the

validity of the loan and mortgage documents, but made no inquiry as to the status

of the [ ] account balance"); *see also Thurman v. Barclays Cap. Real Estate Corp*.,

2011 WL 846441, at *4 (E.D. Cal. Mar. 7, 2011) ("A QWR must seek information

relating to the servicing of the loan; a request for loan origination documents is not

a QWR."); *Jones v. PNC Bank, N.A.*, 2010 WL 3325615, at *2 (N.D. Cal. Aug. 20,

2010) ("A QWR must seek information relating to the *servicing* of the loan; a

request for loan origination documents is not a QWR.").

---

[8](...continued)
borrower pursuant to the terms of any loan." 12 U.S.C. § 2605(i)(3).

Plaintiffs' January 7, 2010 letter requested: (1) a "ledger of payments," (2) "the name of the original creditor and who has legitimate 'possession of the original note,'" and (3) the "'original note' with my signature." Doc. No. 1-2, Compl. Ex. 4. Although the first request for a "ledger of payments" is arguably directed to loan servicing information, the latter two requests are directed to loan origination, as opposed to loan servicing. Thus, Plaintiffs cannot base a RESPA violation on any failure of RCO to provide information in response to the latter two requests.

That Plaintiffs' January 7, 2010 letter (or any of their subsequent letters for that matter) may qualify at least in part as a QWR, however, does not end the analysis. A violation of § 2605(e)(2) occurs only if, after receiving a QWR, a loan servicer fails within sixty days to "either provide the information to the borrower or explain why such information is unavailable." As to this element, the Complaint asserts that "RCO sent an inadequate response . . . and refused to produce even a certified copy of the original promissory note." Doc. No. 1-2, Compl. at 8. As explained above, a failure to provide a certified copy of the Note is not the proper basis of a RESPA violation. Further, as to the Complaint's assertion that "RCO sent an inadequate response," it is wholly unclear what response was inadequate, and Plaintiffs apparently believed that a QWR could

include requests well beyond servicing information.  And this allegation is especially inadequate given that the attachments to the Complaint reveal that on January 18, 2010 (well before the expiration of RESPA's sixty-day time period), RCO responded to Plaintiffs' January 7, 2010 letter by providing, among other things, "a payment history for the loan."  *Id.* at Compl. Ex. 4.  In short, the Complaint fails to explain how RCO's January 18, 2010 letter was an insufficient response to a QWR, and therefore fails to provide notice to Defendants of what *servicing* information they allegedly failed to timely provide Plaintiffs that is the basis of this claim.

> b.    *Damages*

Plaintiffs' RESPA claim also fails because they have not alleged any actual damages.  Pursuant to 12 U.S.C. § 2605(f)(1), Plaintiffs have a burden to plead and demonstrate they have suffered damages.  Specifically, § 2605(f)(1) provides:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
> (1)  Individuals
>      In the case of any action by an individual, an amount equal to the sum of --
>      (A) any actual damages to the borrower as a result of the failure; and
>      (B) any additional damages, as the court may allow, in the case of a pattern or practice of

15

> noncompliance with the requirements of this section, in
> an amount not to exceed $1,000.

Because damages are a necessary element of a RESPA claim, failure to plead damages is fatal to a RESPA claim. *See, e.g.*, *Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, at *14 (E.D. Cal. Sept. 1, 2011) (dismissing claim where the plaintiff failed to "allege any pecuniary loss from defendant's alleged failure to respond to the QWR"); *Soriano v. Countrywide Home Loans, Inc.*, 2011 WL 1362077, at *6 (N.D. Cal. Apr. 11, 2011) (reasoning that "even if a RESPA violation exists, Plaintiff must show that the losses alleged are causally related to the RESPA violation itself to state a valid claim under RESPA"); *Shepherd v. Am. Home Mortg. Servs.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D. N.J. 2006))).

The requirement that a plaintiff plead damages is interpreted "liberally." *Shepherd*, 2009 WL 4505925, at *4. With that said, however, "the plaintiff must at least allege what or how the plaintiff suffered the pecuniary loss." *Ash v. OneWest Bank, FSB*, 2010 WL 375744, at *6 (E.D. Cal. Jan. 26, 2010).

The Complaint asserts that "[a]s a direct and proximate result of

Defendants' failure to comply with RESPA, as set forth herein, Plaintiff has suffered and continues to suffer damages and costs of suit." Doc. No. 1-2, Compl. at 9. This conclusory allegation fails to explain how Plaintiffs suffered actual damages *as a result* of the alleged RESPA violations. *See Shepherd*, 2009 WL 4505925, at *3.

For these reasons, the court GRANTS Defendants' Motion to Dismiss Count I to the extent it asserts a RESPA violation against any Defendant.

### 2. *Accounting*

To the extent that Count I asserts a claim for an accounting, such claim fails to state a claim upon which relief can be granted.

As an initial matter, to the extent Plaintiffs seek an accounting under RESPA, "there is no statutory basis for an accounting under RESPA." *Farias v. FCM Corp.*, 2010 WL 4806894, at *3 (S.D. Cal. Nov. 18, 2010) (citing *Orozco v. DHI Mortg., Co.*, 2010 WL 2757283, *6 (S.D. Cal. July 13, 2010)). Specifically, the remedy provisions of RESPA, 12 U.S.C. § 2605(f), include damages and costs and does not provide for an accounting. *See also Gaitan v. Mortg. Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009).

Further, to the extent Plaintiffs seek an accounting as a stand-alone claim, this court has rejected similar claims in other cases. *See, e.g.*, *Gaspar v.*

*Bank of Am., N.A.*, 2010 WL 4226466, at *7 (D. Haw. Oct. 18, 2010). As

explained in *Gaspar*, "[t]he action of accounting is designed to provide a remedy to

compel a person who, by virtue of some confidential or trust relationship, has

received or been entrusted with money or property belonging to another or which

is to be applied or disposed of in a particular manner, to render an account

thereof." *Block v. Lea*, 5 Haw. App. 266, 277, 688 P.2d 724, 732-33 (1984)

(quoting 1 Am.Jur.2d Accounts & Accounting § 45 (1962)). "The necessary

prerequisite to the right to maintain a suit for an equitable accounting, like all other

equitable remedies is . . . the absence of an adequate remedy at law." *Porter v. Hu*,

116 Haw. 42, 55, 169 P.3d 994, 1007 (Haw. App. 2007) (citation and quotation

signals omitted).

       The Complaint contains no facts explaining why Plaintiffs are entitled

to an equitable accounting from Defendants. Although Defendants were Plaintiffs'

mortgagee and/or mortgagee servicers, a mortgagee does not have a "confidential

or trust relationship" with its mortgagor unless the mortgagee exceeds its role as a

lender of money. *See, e.g.*, *McCarty v. GCP Mgmt., LLC*, 2010 WL 4812763, at

*5 (D. Haw. Nov. 17, 2010) (adopting the well-settled proposition that a borrower-

lender relationship is not fiduciary in nature absent some special circumstances);

*see also Anderson v. Cent. Pac. Home Loans, Inc*., 2011 WL 3439939, at *6 (D.

Haw. Aug. 8, 2011) ("Unless a special relationship exists between a borrower and lender that elevates the lender's responsibility, the standard 'arms-length business relationship' applies." (citing *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 883 (9th Cir. 2007)); *Solomon v. E-Loan, Inc*., 2011 WL 1253840, at *7 (E.D. Cal. Mar. 30, 2011) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature." (citing California law)).

Further, Plaintiffs have pled no factual allegations from which the court can infer that no adequate remedy at law exists, such as, for example, that an accounting is necessary because the mortgage accounts are so complicated that only a court can discern them. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478-79 (1962).

In sum, Plaintiffs are not entitled to an equitable accounting; indeed, if they are able to state a claim upon which relief may be granted, they may seek such information through discovery. The court therefore GRANTS Defendants' Motion to Dismiss Count I to the extent it asserts a claim for an accounting.

## C.     Stay of Nonjudicial Proceedings (Count II)

Count II asserts that "Plaintiffs are entitled to a stay of Non-Judicial foreclosure proceedings under Hawaii Revised Statutes § 667-37 because this action is filed before the property was sold, even though a Non-Judicial sale may

take place."  Doc. No. 1-2, Compl. at 10.  Count II explains that an "illegal sale will cause Plaintiffs great and irreparable injury in that real property is unique and Hawaii Revised Statutes allows for judicial redress under § 667-37."  *Id.*  The sale of the subject property is allegedly illegal because "Defendants have not proved up their actual authority and right to foreclose . . . by proving that all the proper assignments, documentation, and note with mortgage security are held by them." *Id.*

Defendants correctly argue that this claim fails to state a claim upon which relief can be granted because § 667-37 does not provide for a stay of foreclosure pending resolution of civil action filed by the borrower.  Although § 667-37 contemplates that the borrower may file a civil action while the mortgagee is seeking foreclosure, it is silent regarding any stay of foreclosure. Specifically, § 667-37 provides:

> This part shall not prohibit the borrower, the foreclosing mortgagee, or any other creditor having a recorded lien on the mortgaged property before the recordation of the notice of default under section 667-23, from filing an action for the judicial foreclosure of the mortgaged property in the circuit court of the circuit where the mortgaged property is located.

Plaintiffs base this claim on an earlier version of § 667-37, which included an additional sentence that "[w]hile that circuit court foreclosure action is

pending, the power of sale foreclosure process shall be stayed." *See* Doc. No. 1-2, Compl. at 9 (citing repealed language). This language, however, was repealed effective May 5, 2011, prior to Plaintiffs' May 31, 2011 Complaint.[9] *See* 2011 Haw. Sess. Laws Act 48. Thus, § 667-37 does not create a claim for Plaintiffs to stay any foreclosure of the subject property.

Further, to the extent that Plaintiffs attempt to assert a claim against Defendants based on their alleged failure to hold the note, courts have soundly rejected borrowers' claims based on a lender's non-possession of and/or failure to produce the original Note and Mortgage. *See Krakauer v. IndyMac Mort. Servs.*, 2010 WL 5174380, at *9 (D. Haw. Dec. 14, 2010) (citing *Angel v. BAC Home Loan Servicing, LP*, 2010 WL 4386775, at *9-10 (D. Haw. Oct. 26, 2010) ("[T]his Court and other district courts have rejected "show me the note" arguments like Plaintiffs'."); *Brenner v. Indymac Bank, F.S.B.*, 2010 WL 4666043, at *7 (D. Haw. Nov. 9, 2010) (explaining that "[n]o law requires a lender to show a borrower an 'original' mortgage" prior to initiating foreclosure); *Mansour v.*

---

[9] The court recognizes that HRS § 667-53(a)(1) allows the owner-occupant of a residential property that is subject to a nonjudicial foreclosure to convert the action to a judicial foreclosure by filing a petition making this election in the circuit court where the property is located no later than thirty days after the foreclosure notice is served. Such petition "shall automatically stay the nonjudicial foreclosure action unless and until the judicial proceeding has been dismissed." HRS § 667-53(a)(3). The court does not speculate whether § 667-53(a)(1) might apply to the facts of this action.

*Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009)

(discussing why courts routinely reject "show me the note" arguments to avoid

foreclosure)). Thus, Count II fails as a matter of law.

**D.    Quiet Title (Count III)**

Plaintiffs assert that they are the "equitable owners of the Subject

Property," and that they "seek to quiet title against the claims of [Defendants] and

all persons . . . . claiming any legal or equitable right, title, estate, lien, or interest

in the [subject property] adverse to [P]laintiffs' title" because they "have no right,

title, estate, lien or interest in the Subject Property." Doc. No. 1-2, Compl. at 11-

12.

As this court has explained in numerous orders alleging similar

claims, *see, e.g.*, *Teaupa v. U.S. Nat'l Bank N.A.*, --- F. Supp. 2d ----, 2011 WL

6749813, at *15 (D. Haw. Dec. 22, 2011); *Abubo v. Bank of N.Y. Mellon*, 2011 WL

6011787, at *5 (D. Haw. Nov. 30, 2011); *Long v. Deutsche Bank Nat'l Trust Co.*,

2011 WL 5079586, at *12 (D. Haw. Oct. 24, 2011), the court construes such claim

as being brought under Hawaii Revised Statutes ("HRS") § 669-1(a) ("[Quiet title]

[a]ction may be brought by any person against another person who claims, or who

may claim adversely to the plaintiff, an estate or interest in real property, for the

purpose of determining the adverse claim."). Plaintiffs, however, have not alleged

22

sufficient facts regarding the interests of various parties to make out a cognizable claim for "quiet title." Plaintiffs have merely alleged elements of § 669-1, and thus the Count fails to state a claim. *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.).

Further, in order to assert a claim for "quiet title" against a mortgagee, a borrower must allege he has paid, or is able to tender, the amount of indebtedness. "A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the deed of trust.'" *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)). "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." *Id.* (citations omitted). Applying this law here, Plaintiffs have not indicated that they have paid their outstanding loan balance, much less that they are able to do so. In short, they fail to state a claim for quiet title.

The court therefore GRANTS the Motions to Dismiss as to Count III.

## V. <u>CONCLUSION</u>

Based on the above, the court GRANTS Moving Defendants' Motion

to Dismiss.  This dismissal is as to all claims against all parties.

If Plaintiffs so choose, they may file an Amended Complaint, consistent with this Order, by March 12, 2012.  Plaintiffs are further notified that an Amended Complaint will supersede the Complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the court will treat the Complaint as nonexistent.  *Ferdik*, 963 F.2d at 1262.  Any cause of action that was raised in the Complaint is waived if it is not raised in the Amended Complaint.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

If Plaintiffs choose to file an Amended Complaint, they must assert basic factual allegations in sufficient detail to state a "plausible" claim, and then clearly set forth separate counts for each cause of action.  That is, such pleading must:

(1)     state clearly how *each* of the Defendants has injured Plaintiffs, or how the court can provide relief against each Defendant.  In other words, Plaintiffs should explain, in clear and concise allegations, what each Defendant did (or failed to do) and how those specific facts create a plausible claim for relief in reference to a specific statute or common-law cause of action;

(2)     set forth separate counts for each cause of action.  In other words,

        Plaintiffs should not lump multiple causes of action within a single

        count; and

(3)     state clearly the relief sought and how there is basis for a claim in

        federal court.  In other words, Plaintiffs must explain the basis of this

        court's jurisdiction.

Leave is not granted, however, for Plaintiffs to assert claims for an equitable

accounting or violation of HRS §§ 667-4 or 667-37.  Granting leave to amend such

claims would be futile for the reasons described above.

        If Plaintiffs fail to file an Amended Complaint by March 12, 2012,

this action will be automatically dismissed.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, February 13, 2012.



                        /s/ J. Michael Seabright
                        _____
                        J. Michael Seabright
                        United States District Judge

*Lindsey et al. v. Meridias Cap., Inc. et al.*, Civ. No. 11-00653 JMS/KSC, Order Granting
Defendants Mortgage Electronic Registrations Systems, Inc.; Bank of America, N.A.; and U.S.
Bank, N.A.'s Motion to Dismiss Plaintiffs' Complaint

25